### Ex parte NOLTE. (No. 7312.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1925.)

**1. Marriage ☾⟹60(1)—Marriage of female under age of 18 merely voidable at her suit.**

Marriage of a female under age of 18 is not void, but merely voidable at suit of female, and not her relatives, nor even her parents, without female's consent.

**2. Divorce ☾⟹12—Marriage ☾⟹58(1) — Marriage of girl under age of 18 not ground for divorce or annulment.**

Marriage of a girl under age of 18 is not ground for divorce or annulment, in absence of fraud, coercion, or deceit.

**3. Marriage ☾⟹58(1)—Laws of marriage and divorce not amplified to allow disaffected mother to annul marriage of daughter.**

Courts will not amplify laws of marriage, so as to allow disaffected mother to annul any marriage of her daughter with which she is not pleased.

**4. Habeas corpus ☾⟹85(1)—Evidence held not to justify granting of writ to secure release of applicant's daughter from her husband.**

Evidence *held* not to justify granting of writ of habeas corpus to secure release of applicant's minor daughter from her husband with whom she was living voluntarily.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Habeas corpus by Mrs. J. M. Armour, as next friend of Rose Armour Nolte, directed against E. M. Nolte. Judgment for plaintiff, and respondent appeals. Reversed, and application dismissed.

Gaines, Quin, Harley & Gaines, of San Antonio, for appellant.

W. S. Anthony, of San Antonio, for appellee.

FLY, C. J. Mrs. J. M. Armour, representing herself to be the next friend of Rose Armour Nolte, applied for a writ of habeas

corpus to the district court alleging that the latter was illegally restrained of her liberty and confined in an apartment at the corner of Dewey street and Jones avenue, in the city of San Antonio, by E. M. Nolte. The respondent, E. M. Nolte, denied the allegations of the application, and alleged that Rose Armour Nolte was lawfully married to him, and was voluntarily remaining in his company and living with him as his wife. The facts did not support the allegations of the petition, but sustained the answer of the respondent, but the court granted the writ of habeas corpus, and ordered "that the body of the said Rose Armour Nolte be delivered by the sheriff of Bexar county, Tex., to the custody and care of the mother of the said Rose Armour Nolte, to wit, Mrs. Anna Armour, and that the said Mrs. Anna Armour is to have the custody and care of Rose Armour Nolte, until the further order of this court." Respondent appealed.

The facts show the Rose Armour and E. M. Nolte were lawfully united in marriage on June 12, 1924, and had with one slight intermission lived together as man and wife since that time. The mother swore that her daughter was only 15 years and 10 months old when she married. It seems that, prior to the habeas corpus proceeding, the mother and father of Rose had applied, as her next friends, for a divorce for Rose from her husband on the ground that she was a minor, and that her husband had made an affidavit that Rose was 18 years old, and thus obtained a license to marry, "which conduct was so cruel, outrageous, and insupportable in its nature that even had she married him willingly, she could no longer live with a husband who could thus outrage her feelings." It was also alleged that Rose had escaped and fled to her relatives, but that respondent "by his persuasive powers and influence over her caused her to again leave the protection of her relatives, and by force and violence in addition to his persuasive entreaties again took her to his home." It was also alleged that, before she fled to her relatives, respondent had "assaulted and beat her."

The evidence discloses another of those cases of the fond mother who permits her 15-year old daughter to go out with men in automobiles at night, and then go into a fit of sorrow or rage when a catastrophe comes. In this instance it ended in marriage with a man against whose character no complaint was urged, except that he had sworn that the girl was 18 years of age. It might have had a more tragic ending. Mrs. Armour said:

"I thought she was too young to go with him. Mothers do things lots of times against their own judgment, still I thought there was no harm, no danger. I do not think it is all right for a girl of her age to go out with young men, I didn't forbid it, but I objected to it."

She admitted that she had not heard anything unfavorable of Mr. Nolte "but just because she was so young." She announced the marriage in the newspapers. Rose Armour Nolte swore that she had not been restrained of her liberty, but that, at the time the affidavit for the writ of habeas corpus was made, she was in Waco on a visit, where she had gone voluntarily, leaving her husband in San Antonio. She stated:

"I have never been restrained or held a prisoner by my husband against my will. He never at any time kept me from going out of the house or into the house, and he never kept me confined in any room or in any house. I have not been involuntarily subjected to imprisonment anywhere; that is, I have not been put or kept anywhere without my consent."

She stated that in a fit of nervousness she went to her sister's home and she voluntarily returned to him on the following day. She swore:

"He never did beat me nor abuse me in any way. I love my husband and want to live with him, or I wouldn't have gone back with him."

This testimony was absolutely uncontradicted, and there was no evidence whatever on which to base a charge of illegal restraint. Mrs. Armour admits her mistake in regard to permitting her daughter to go out at night with a man in an automobile, but she is probably committing a more grievous mistake in endeavoring to destroy a marriage voluntarily made, and which the daughter swears is satisfactory to her, and which she does not wish to have annulled. The mother should have exercised restraint over her daughter when she was under the family rooftree, and when it was her duty to have exercised such restraint, but it is ill-timed after the daughter has willingly entered into the marriage state, and desires to remain in that state, for the mother to seek to destroy the marriage.

[1-3] The marriage of a female under the age of 18 is not void, but merely voidable at the suit of the female and not her relatives, not ever her parents, unless with the consent of the female. Marriage of a girl under the age of 18 is not made a ground of divorce, but it must be accompanied by fraud, coercion, or deceit in order to form a ground for annulment of the bonds of matrimony. Courts will not amplify the laws of marriage and divorce, so as to allow disaffected mothers to annul any marriage of her daughters with which she is not pleased. The consequences would be probably worse for the girl married under the age of consent, if she has reached the age of puberty, to destroy the marriage, than to permit them to live together in peace without interference and intermeddling upon the part of misguided relatives or friends.

In regard to the age of Rose Armour Nolte, the latter swore that her mother told Nolte that she (Rose) was 18 years old. She also stated:

"One time, when there was an accident to a car in which I was driving, and the insurance adjuster investigated the matter and asked my age, my mother stated I was 18."

There was no element of fraud or deception in the marriage, and the wife is perfectly satisfied with her marriage. She should not be disturbed. The application for the writ of habeas corpus was signed by the mother alone, and it may be that strictly construed the court should not have considered the application, on the ground that she was not joined by her husband in the suit. However, there was pending in the same court a suit for divorce instituted by the father and mother of the girl, showing that they were acting together, and that the writ of habeas corpus was merely ancillary to the divorce suit, and was not the institution of a new suit. We are unwilling to hold that an application for a writ of habeas corpus by a mother is not legal when the life, liberty, or safety of her child is really in peril. In the true sense of the term the application is not a real suit.

[4] We think, however, that one parent or both of them were endeavoring to interfere with the affairs of the daughter with which they had no legal concern, and that the judgment granting the writ was without fact, law, or equity to sustain it.

The judgment is reversed, and the application dismissed.